**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
────────────────────────────────────

ANTHONY HARDEN,

                              Petitioner,

        v.
                                                No. 9:18-CV-162
LEROY FIELDS,                                   (MAD/CFH)

                              Respondent.

────────────────────────────────────

**APPEARANCES:**                         **OF COUNSEL:**

Anthony Harden
17 Limerick Drive
Unit A
Albany, New York 12204
Petitioner pro se

Attorney General for the                 PRISCILLA I. STEWARD, ESQ.
State of New York                        Assistant Attorney General
28 Liberty Street
New York, New York 10005
Attorney for Respondent

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

            **REPORT-RECOMMENDATION AND ORDER**[1]

        Presently pending before the Court is a petition for a writ of habeas corpus filed

pursuant to 28 U.S.C. § 2253 by petitioner pro se Anthony Harden ("petitioner").[2]  See

──────────────────────

[1]  This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2]  Petitioner is no longer incarcerated; rather, he is currently serving a term of supervised release. Although petitioner is no longer incarcerated, "[a]n individual on probation or parole is 'in custody' for purpose of federal habeas corpus proceedings."  Rosato v. N.Y. Cty. Dist. Attorney's Office, No. 09-CV-3742 (DLC), 2009 WL 4790849, at *4 (S.D.N.Y. Dec. 14, 2009) (quoting U.S. ex rel. B. v. Shelly, 430 F.2d 215, 217 n. 3 (2d Cir. 1970) (additional citations omitted); see Earley v. Murray, 451 F.3d 71, 75 (2d Cir. 2006) ("Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody.'" (citation omitted)).

Dkt. No. 1 ("Pet").  In June 2013, following a jury trial in New York State Supreme Court, Albany County, petitioner was convicted of two counts of assault in the second degree in violation of N.Y. PENAL LAW § 120.05(2).  See Pet. at 1; People v. Harden, 134 A.D.3d 1160, 21 N.Y.S.3d 730 (N.Y. App. Div. 3d Dept. 2015).[3]  Petitioner was adjudicated to be a second felony offender and sentenced to determinate prison terms of seven years, plus five years of post-release, and five years, plus five years of post-release supervision, with the sentences to run consecutively.  See Pet. at 1; Harden, 134 A.D.3d at 1160; Dkt. No. 11-2 at 437, 448.

Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) the New York State Supreme Court, Albany County, violated his due process rights by improperly charging the jury on the defense of justification and by failing to instruct the jury that if it found petitioner justified with respect to the first-degree assault counts, it could not consider lesser included counts of second-degree assault; (2) trial counsel was ineffective for failing to timely object to the trial court's justification instruction; and (3) appellate counsel was ineffective because he: (a) misunderstood the trial record and erroneously argued that  the jury rejected the justification defense; (b) briefed claims that were unpreserved for appeal; and (c) failed to argue that the imposition of consecutive sentences was illegal.  See Pet. at 5-12.  Respondent opposed the petition.  See Dkt. No. 10.  Petitioner filed a traverse in reply to

---

[3]  The pro se petition mistakenly refers to the trial court as the "Albany County Judicial Center."  Dkt. No. 1 at 1; cf. People v. Harden, 134 A.D.3d 1160, 21 N.Y.S.3d 730 (App. Div. 3d Dept. 2015) ("Appeal from a judgement of the Supreme Court (Breslin, J.), rendered July 23, 2013 in Albany County, upon a verdict convicting defendant of the crime of assault in the second degree (two counts).").

respondent's opposition.  <u>See</u> Dkt. No. 20.  For the reasons that follow, it is recommended that the petition be denied.

## I. Background

### A. The Trial[4]

### 1. Undisputed Facts

On the afternoon of September 19, 2009, petitioner's girlfriend, Veneilya Goodwin ("Goodwin") was driving petitioner and the couple's then-two-year-old daughter to her home on Lark Street from Price Chopper on Delaware Avenue in Albany, New York, where petitioner had just finished his shift in the recycling center.  <u>See</u> Dkt. No. 11-1 at 207, 334.[5]  Meanwhile, a group of friends consisting of John Puerta ("John"), Chris Puerta ("Chris"), Richard Thomas ("Thomas"), Trenton Howard ("Howard"), Mike Cardillo ("Cardillo"), Hannah Schreck ("Schreck"), and Stephanie Morillo ("Morillo") (collectively, where appropriate, "the Lark Fest Group") were also making their way home after attending Lark Fest, an annual street festival held in Albany.  <u>See</u> <u>id.</u> at 200.  The two groups converged at the intersection of Henry Johnson Boulevard and State Street as the Lark Street Group was crossing through the intersection.  <u>See</u> <u>id.</u> at 201, 208.  The ensuing confrontation resulted in petitioner being

---

[4]  A jury previously convicted petitioner of several crimes arising out of the facts discussed herein; however, upon direct appeal of his initial conviction, the New York State Supreme Court, Appellate Division, Third Department, reversed the conviction and remitted the matter for a new trial on the basis that defendant was not afforded his constitutional right to testify on his own behalf.  <u>See</u> <u>People v. Harden</u>, 99 A.D.3d 1031, 1034 (N.Y. App. Div. 3d Dept. 2012), <u>lv</u> <u>denied</u> 20 N.Y.3d  986 (N.Y. 2012).  Thereafter, a new trial was held, which commenced in June 2013.  <u>See</u> Dkt. No. 11-1 at 199.  Therefore, the discussion contained under the subheading "The Trial" refers only to petitioner's June 2013 retrial and subsequent procedural history—the basis of petitioner's present petition.

[5]  The page numbers refer to the header numbers generated by CM/ECF, not the pagination of the individual transcripts.

charged with three counts of assault in the first degree (N.Y. PENAL LAW § 120.10(1)), and three counts of assault in the second degree (id. at § 120.05(2)). See Dkt. No. 11-1 at 168-72. Defendant was tried as a second felony offender based on his previous conviction for possession of a controlled substance in the fourth degree (N.Y. PENAL LAW § 220.09(1)). See Dkt. No. 11-1 at 173-74.

## 2. The Prosecution's Case

Morillo testified that she and her husband, John, were walking next to each other while the remainder of the Lark Street Group was "a little ahead of" them. Dkt. No. 11-2 at 30. Morillo stated that, when "it was time to cross [the intersection, . . . there was a car coming really fast and it was right as [they] were crossing the street, so they stopped." Id. Morillo stated that "[t]he woman that was driving started yelling and cursing at [Morillo] so [Morillo] said back to her, as [she] was crossing the street, to shut the fuck up and keep going because [she and John] weren't in the wrong." Id. She stated that "it bothered [her] that [Goodwin] just started getting nasty with [her]." Id. Following the heated verbal exchange between Morillo and Goodwin, Morillo testified that she and John continued walking away from the vehicle up the sidewalk when, "out of nowhere," she noticed petitioner, shirtless, approaching them, asking John, "is that your girl?" Id. at 31. Goodwin also exited the vehicle and approached John and Morillo and "started cursing at [Morillo]." Id. Next, Morillo testified, as she was "trying to diffuse the situation," Goodwin threw her to the ground and started punching her. Id. at 31; see id. at 32. When Goodwin stopped, Morillo stated that her next recollection was that she "looked to [her] left and . . .saw" Chris, John, and Thomas "bleeding" and petitioner

"running."  Id. at 33.  Morillo testified that "John was bleeding from his face, . . . [and] holding on to what [she] thought was his intestine.  His insides were out."  Id.

Eye-witnesses William Weitz ("Weitz") and Kevin Mossey ("Mossey"), residents of a building near the intersection, observed what transpired.  See Dkt. No. 11-1 at 249. Weitz testified that he was sitting in front of his building with Mossey and another friend after returning home from Lark Fest when he "saw an argument with people in the crosswalk."  Id. at 252.  Following the argument, Weitz testified that Morillo and her group "proceed[ed] up State Street . . . [w]alking away from Henry Johnson [Blvd.]."  Id. at 252.  Then, the vehicle driven by Goodwin "pulled over and parked kind of on the corner of the street but definitely in the intersection/crosswalk area."  Id.  Weitz stated that petitioner then "took off his shirt rapidly and got out of the car" and proceeded "in the direction of the [Lark Fest G]roup . . . up State Street."  Id. at 254.  Mossey also testified that he witnessed petitioner exit the vehicle, take off his sweatshirt, which he threw in the back seat of the vehicle, and "proceeded to basically head up towards State Street . . . ."  Id. at 285.  Weitz and Mossey both testified that they followed the group up state street.  See id. at 254, 287.  Weitz explained that, when he and Mossey reached the group, they "were around 427 State Street, which is a thousand feet, a football field" away from where they were initially watching.  Id. at 254.  Mossey took down the license plate number of Goodwin's vehicle.  See id. at 287.

Weitz further testified that, when petitioner reached the group, they were standing in the park, off the sidewalk and in the grass, at which point a verbal argument escalated into a fist fight between petitioner and "the guys that were with th[e] women." Id. at 255.  Weitz next observed Goodwin drive up the wrong way on State Street, exit

the vehicle, and begin fighting "with some of the females that were with [the Lark Fest G]roup." Id. at 256.  Mossey stated that he recalled "yelling, hey, you're driving the wrong way," to which Goodwin replied, "fuck you." Id. at 287.  Mossey stated that, upon exiting the vehicle, petitioner's girlfriend shoved "the dark-haired girl" and "all hell br[oke] loose," with everyone involved getting into what he described as a "brawl." Id. at 289.  Mossey explained that, he then observed three or four male members of the Lark Fest Group near petitioner, who was "up against [a] car" and "f[e]ll backward making a . . . large clearing." Id. at 290.  Mossey then stated that he watched petitioner "lash out at [one of the men's] chest and strike him in the chest." Id.  Mossey did not see "what [petitioner] lunged at him with," but stated that he "first . . . thought that [petitioner] just hit him" until he "saw the blood coming out of [the man's] chest and his mouth and . . . realized that he hadn't been punched, that he had been stabbed." Id. at 291.  Weitz observed that one of the men from the Lark Fest Group who had been involved in the fight with petitioner had "a puncture wound to his upper left-hand side and one had either a cut or stab wound to his stomach." Id. at 256-57.  Weitz stated that petitioner then "came at" "a gentleman that went to take like a photo or something," and that petitioner and Goodwin then proceeded to get back into their vehicle and drive the wrong way up State Street and turned out of view onto a side street. Id. at 257; see id. at 258.

John testified that, "about 30 seconds" after the heated exchange between petitioner's girlfriend and Morillo, John "saw [petitioner] come flying across the street at [him]" and that petitioner "looked pretty pissed." Dkt. No. 11-2 at 112.  John testified that, upon reaching him and Morillo, petitioner stated "[y]ou need to control your girl" in

a "[p]issed off, angry, aggressive" manner.  Id. at 113.  John stated that he realized that petitioner wanted to fight him and that petitioner was much bigger, so John called up the street to his brother, Chris, and his friends.  Id. at 114.  John testified that he apologized to petitioner for yelling at him and his girlfriend, "but [petitioner] wasn't having it" and "kept arguing."  Id.  When his brother and Thomas walked down, the group "told [petitioner] get out of here, we don't feel like fighting with you, we're trying to continue our day.  And the next event that [John] remember[ed was that petitioner] punched [him] in the nose."  Id.  John further testified that, after petitioner punched him in the nose, he, Chris, Thomas, and petitioner fought "for a short period of time," until petitioner, "at some point . . . spun around and stabbed [John] in the lower left side [of his] abdomen." Id. at 115.  John stated that, when he looked down, his "intestines were hanging out," which he stated prevented him from informing Chris and Rich that petitioner had a knife, because when he tried to speak, his intestines "kind of popped out more."  Id.  John explained that he saw the knife, which he described as "small, little, maybe like an inch long."  Id. at 117.

Cardillo testified that he unsuccessfully attempted to break up the fight, at which point he observed petitioner "reach into his waistband" and that he "scream[ed] out [that petitioner was] reaching for something" and that petitioner "pulled out a knife and . . . stabbed John."  Dkt. No. 11-1 at 323.  Cardillo stated that, after petitioner stabbed John, John "immediately fell" and that "[h]is intestines were hanging out of his body."  Id. at 323-24.  He further testified that, when Chris saw John on the ground, he "went to lean in to . . . help [him] and that's when [petitioner] stabbed Chris in the neck too."  Id. at 324.  Cardillo also testified that, prior to the fight breaking out, he heard petitioner state,

7

"I live for this shit." Id. at 323. Schreck testified that, while petitioner was stabbing the victims with the knife, she heard him repeatedly "screaming," "this is what I do." Dkt. No. 11-2 at 143. Thomas also suffered a laceration to his extensor tendon as a result of the stabbing, which required surgery to repair. See Dkt. No. 11-1 at 281-83.

Moreover, Albany Police Department Detective Kevin Meehan ("Detective Meehan") testified that, upon arrival on the scene, "[b]ecause of the types of injuries and the chaos that was going on around us, [he and his partner] immediately went to render aid to the people who were hurt." Dkt. No. 11-1 at 221-22. Detective Meehan testified that he asked John "to show [him] the injuries," at which point Detective Meehan observed that John's "intestines were coming out of his stomach." Id. at 222. Further, Detective Meehan stated that he observed Chris "laying down a few feet to the west of [John]," with "some sort of puncture wound in his upper chest area, shoulder area," and that "[h]is face was completely purple and . . . struggling to breath." Id.

### 3. The Defense Case

The defense called Alex Liepman ("Liepman") as a witness, who testified that, on the day of the incident, he and his mother were driving home from Lark Fest, when his mother had to stop their vehicle because "[t]here was a vehicle going the wrong way down a one way and it was blocking [their] path." Dkt. No. 11-2 at 234. Liepman stated that he observed that a fight was occurring in which there were "five [white] men fighting against one [black man] off to the side of [him] on the park side," approximately "20 or 30 feet" away. Id. at 234, 235. Further, Liepman testified that the one black man, petitioner, had a knife and that he "believe[d that he] saw him stab at least one person"

8

and that he thought he "saw him waving it around." Id. at 236.  On cross examination, Liepman responded in the affirmative that, in the prior proceeding in 2010, when asked which person had produced the knife, he had responded, "I think it was the black guy." Id. at 238.  Defense also called Goodwin as a witness.  See id. at 239.  Goodwin testified that, when she approached the intersection of State Street and Henry Johnson Boulevard, she had a "green light" her "favor."  Id. at 244.  She stated that, as she was passing through green light, she "had to stop because there was a couple coming through and [she] beeped [her] horn at them," after which the woman she knew to be Morillo "flipped round and began cursing at [her] and [they] had a back and forth exchange."  Id.  Goodwin stated that, "[t]he light turned red[,]" but that she did not notice that the light had turned red immediately, and that "dirt came flying through [her] car . . . and [petitioner] was like pull over."  Id. at 244-45.  She stated that petitioner exited the vehicle and walked toward John and Morillo.  See id. at 248.  Goodwin testified that the other individuals from the Lark Fest Group then returned to where John, Morillo, and petitioner were standing, and began "surrounding" petitioner.  Id. at 251.  According to Goodwin, Morillo "came toward [her]," so she "pushed [Morillo] and [they] [be]came entangled by the hair and fell to the ground."  Id. at 252.  Goodwin stated that both Schreck and Morillo fought her.  See id. at 254.  After fighting Morillo, Goodwin testified that she saw petitioner fighting with a group of men and that he was up against a parked vehicle, and that after another "minute [or] two," petitioner came "running to the car," and they drove away.  Id. at 255.  Goodwin stated that, once she and petitioner returned home, she called 911, and that the police later came to her home and arrested petitioner.  See id. at 256, 263.

9

Finally, the defense called petitioner, who testified that, on the day of the incident, Goodwin had picked him up after his shift at Price Chopper.  See Dkt. No. 11-2 at 276.  Petitioner stated that, "when we got to the intersection" at Henry Johnson and State, "the car lurched" and Goodwin "beeped the horn and she had words with a lady that was out on the street."  Id.  Petitioner stated that, "later dirt came in the window and [he] had said who threw that."  Id. at 277.  Goodwin told him that John and Morillo threw dirt into the vehicle and petitioner "said pull over."  Id.  He stated that he exited the vehicle, threw his work shirt that had been over his shoulder into the car and "walked . . . diagonally across the street . . . not even 50 feet."  Id.  Petitioner testified that, "when [he] got to the side of the car, the sidewalk, [he] was like yo and this guy turned around and when the guy turned around [he] was like is that your lady?  Is that your girl?  Is that your broad?  And he's like yea."  Id. at 277-78.  Petitioner then testified that he stated to John, "yo, you need to get a hold on her.  Dirt came in our window.  It could have very well got on my daughter."  Id. at 278.  He stated that "[w]hen [he] turned around, [John's] friends were all like all there."  Id.  After a verbal exchange with John, Thomas, and Chris, petitioner stated that Goodwin got out of the car and approached the group, at which point Morillo cursed at her and "they started fighting."  Id. at 279.  Petitioner states that he was then "hit in the back of the head and when [he] got hit in the back of the head, that's when [he] hit [John] who was in front of [him.]"  Id.  Petitioner testified that Mike, Thomas, John, Chris and Howard were all throwing punches at him.  See id. at 280.  He further stated that he attempted to flee, but tripped and fell and that all five men kneed and kicked him.  See id.  Further, petitioner testified that he was "pinned" to a parked car and had to fight his way off of the car, at which point he "had grabbed one

of them" and that "[w]hen he went to grab him, he tried to snatch away and our hands came in contact." Id. Petitioner stated that he "snatched the knife in his hand. I had cut my thumb on the knife, but that was later. When I got the knife in my hand, I was still— like . . . against the car and I stabbed just like that (Indicating.)." Id. He testified that he "stabbed three times, three or more . . . because [he] believed they was [sic] trying to kill [him]." Id. at 288. Petitioner testified that he does not know who he took the knife from. See id. He stated that "[a]ll three of them fell off me. When they fell off me, I dropped the knife and I ran and when I ran I fell by the tree because I was messed up and when I hit the ground I saw my wife's slippers, picked them up and . . . . got in the car . . . [and] went home." Id. at 280-81.

### 4. Charge Conference

Following the close of the evidence, the attorneys for the prosecution and defense met with the judge outside of the presence of the jury for a charge conference. See Dkt. No. 11-2 at 317. The prosecution indicated that it's proposed jury charge included an "expanded charge on intent," which the court deduced to mean that the prosecution was "suggesting the [charge] straight from the CJI," to which the prosecution responded in the affirmative. Id. Defense counsel stated on the record, "I previously provided the [c]ourt and the [prosecution] with the justification and other than that, the [c]ourt's standard charges. I don't have anything else." Id. at 317-18. Defense counsel "ha[d] not objection to the expanded intent" proposal contained in the CJI, as requested by the prosecution. Id. at 318. After a brief adjournment, during which

counsel was permitted to submit written proposals for jury charges, the court stated on the record:

> I've looked at everything. The last thing we're down to is justification and in essence what I'm going to do is give it almost exactly as suggested, the instructions I gave exactly last time with the additional language [defense counsel] provided . . ., namely that new paragraph that's in the new CJI which has been amended and this provision's been added to it since the last trial.

Id. at 330. The court then asked defense counsel and the prosecution, "[i]s that agreeable to you?" Id. Both defense counsel and the prosecution answered in the affirmative. See id. Neither defense counsel nor the prosecution had anything else to add concerning the jury charge thereafter. See id.


### 5. Jury Charge: Justification

In relevant part, the court provided the following charge to the jury concerning the crimes of assault in the first and second degree and the defense of justification:

> [D]efendant has been indicted by the grand jury of this county and charged with three counts of assault in the first degree and three counts of assault in the second degree.
> Now, the defendant has raised the defense of justification, also known as self-defense. The defendant, however, is not required to prove that he was justified. The People are required to prove beyond a reasonable doubt that the defendant was not justified. I will now explain our law's definition of the defense of justification as it applies to this case. Under our law, a person may use deadly physical force upon another individual when, and to the extent that, he reasonably believes it to be necessary to defend himself from what he reasonably believes to be the use or imminent use of deadly physical force by such individual. . . . .
> The determination of whether a person reasonably believes deadly physical force to be necessary to defend himself from what he reasonably believes to be the use or

12

> imminent use of deadly physical force by another individual
> requires the application of a two-part test.  The test applies
> to this case in the following way:
>     First, as regards to count one and four of this
> indictment, the defendant must have actually believed that
> Jonathan Puerta was using or was about to use deadly
> physical force against him and the defendant's own use of
> deadly force was necessary to defend himself from him; and
>     Second, a reasonable person in the defendant's
> position, knowing what the defendant knew and being in the
> same circumstances, would have had the same beliefs.

Dkt. No. 11-2 at 377-79.  The court gave the same instructions with regard to counts

two and five and three and six of the indictment—the first-degree and second-degree

assault charges relating to Christopher Puerta and Richard Thomas, respectively.  See

id. at 379-80.  The court continued,

> Thus, under our law of justification, it is not sufficient
> that the defendant honestly believed in his own mind that he
> was faced with defending himself against the use or
> imminent use of deadly physical force.  An honest belief, no
> matter how genuine and sincere, may yet be unreasonable.
>     To have been justified in the use of deadly physical
> force, the defendant must have honestly believed it was
> necessary to defend himself against what he honestly
> believed to be the use or imminent use of such force by
> Jonathan Puerta, Christopher Puerta and Richard Thomas,
> considered individually, and a reasonable person in the
> defendant's position, knowing what the defendant knew and
> being in the same circumstances, would have believed that
> too.

Id. at 380.  Moreover, the court charged the jury that "[t]he defendant would not be

justified if he was the initial aggressor[,]" which the court defined.  Id. at 381.  In

addition, the court charged the jury that "the defendant would not be justified if he knew

that he could with complete safety to himself and others avoid the necessity of using

deadly physical force by retreat"; or "if the conduct of Jonathan Puerta, Christopher

Puerta or Richard Thomas, considered individually, was provoked by the defendant

himself with intent to cause physical injury to either Jonathan Puerta, Christopher

Puerta or Richard Thomas." Id. at 382.  As relevant, the court charged the jury

concerning the burden of proof as to the justification defense, and stated that

> The People are required to prove beyond a
> reasonable doubt the defendant was not justified.  It is thus
> an element of each count of the indictment that the
> defendant was not justified.  As a result, if you find the
> People have failed to prove beyond a reasonable doubt that
> the defendant was not justified, then you must find the
> defendant not guilty on all counts.

Id. at 382-83 (emphasis added).  The court then went on to charge the jury as to the

elements of the crimes of first-degree assault, including that "the defendant was not

justified."  Id. at 385.  The court then explained that the crime of second-degree assault

was "what's called a lesser-included offense[,]" and instructed the jury that, "[i]f you find

the defendant guilty of assault in the first degree, you will not consider assault in the

second degree.  If and only if you find the defendant not guilty of assault in the first

degree as charged . . . will you proceed to consider the lesser-included of assault in the

second degree."  Id. at 385-86 (emphasis added).  The charged the jury as to the

elements of the crime of assault in the second degree, including that "the defendant was

not justified."  See id. at 386-398.  After the court finished its jury charge, the court

asked defense counsel and the prosecution whether they had "[e]xceptions or

requests[,]" to which all counsel replied "[n]o."  Id. at 402.

　　　　After the jury had submitted a note to the court that it had reached a verdict, but

before the jury was called back into the courtroom, defense counsel informed the judge

that her "client want[ed] to put something on the record prior to the jury entering."  Dkt.

No. 11-2 at 424.  Although the court reminded defense counsel that petitioner was not

entitled to a "hybrid representation," the court allowed defense counsel to state

defendant's request.  Id.  Defense counsel then informed the court:

> It appears as though, Your Honor, [petitioner has] got an
> objection that the [c]ourt was instructing the jury, with regard
> to justification, that they needed to be considered individually
> and that it should have been instructed that justification was
> one act.  I have talked to my client about this multiple times,
> but he's insisting that I am wrong and that the justification
> shouldn't have been an individual instruction and he wants
> that to be noted for the record, that it should have been said
> that he was justified or not justified, not justified against each
> individual individual, each named in the indictment.

Id. at 424-25.  The court replied, "the objection was not made timely.  Moreover, it's not

appropriate but thank you for bringing that to our attention."  Id. at 425.


### 5. Verdict and Sentencing

The jury acquitted petitioner of all first-degree assault counts, as well as the

second-degree assault count relating to the stabbing of Jonathan Puerta.  See Dkt. No.

11-2 at 426-28.  The  jury convicted him of the remaining two second-degree assault

counts relating to the stabbings of Christopher Puerta and Richard Thomas.  See id. at

428-29.  On July 23, 2013, the court adjudicated petitioner a second felony offender and

sentenced him to a determinate prison terms of seven years, plus five years of post-

release supervision on the second-degree assault conviction relating to Christopher

Puerta, and five years, plus five years of post-release supervision on the second-degree

assault conviction relating to Richard Thomas.  See id. at 437, 448.  Moreover, the court

fashioned the sentences to run consecutively, because the crimes petitioner was

convicted of were "separate acts."  Id. at 448.

**B. Direct Appeal**

Petitioner's appellate counsel filed a brief in the New York State Supreme Court, Appellate Division, Third Department, arguing that: (1) petitioner's convictions for second degree assault were not supported by the weight of the evidence; (2) the jury's rejection of the defense of justification was not supported by the weight of the evidence; (3) the court's jury charge concerning the defense of justification was "confusing and an incorrect statement of law"; and (2) the imposition of consecutive sentences was "harsh and excessive." See Dkt. No. 11-1 at 160, 162 (capitalization omitted); see id. at 155-164.

Petitioner also filed a pro se supplemental brief, arguing that: (1) the trial court's "jury instruction improperly removed an issue of fact, failing to allow the jury a fair consideration of defendant's justification defense, depriving him of a fair trial"; (2) the trial court "failed to instruct the jury that a finding of not guilty by reason of justification[] precluded consideration of the lesser included offenses"; (3) trial counsel was ineffective because she "failed to make a timely objection to the [t]rial [c]ourt's improper jury instruction"; and (4) the trial court erred in polling the jury only as to the counts on which he was convicted, but not as to the counts on which he was acquitted. Dkt. No. 11-2 at 461, 464, 469 ; see id. at 460-74.

In a decision and order dated December 3, 2015, the Appellate Division denied petitioner's direct appeal and affirmed the trial court's July 23, 2013 judgment of conviction. See People v. Harden, 134 A.D.3d 1160 (N.Y. App. Div. 3d 2015). The Appellate Division held that petitioner had failed to preserve for appellate review the following claims: that (1) the evidence was legally insufficient to establish either that he

16

intended to cause physical injury or that he was the aggressor rather than trying to escape from the confrontation; (2) the jury's rejection of the justification defense was against the weight of the evidence; (3) the Supreme Court's jury instruction on justification was erroneous; and (4) the Supreme Court erred in failing to poll the jury on the counts on which petitioner was acquitted.  See id. at 1160, 1164, 1165.  As relevant, with respect to petitioner's claim that the Supreme Court's jury instruction on justification was erroneous, the Appellate Division explained that petitioner's

> [trial] counsel expressly agreed to the instruction during the
> charge conference and, thereafter, neither objected when
> the charge was given nor when the jury asked to have it
> reread during deliberations.  Counsel objected to the
> instruction for the first time only after the court received a
> note from the jury indicating that it had reached a unanimous
> verdict.  As this objection came too late to permit any error to
> be corrected, the claim is unpreserved.

Id. at 1164 (citing N.Y. CRIM. PROC. LAW 470.05(2) (additional citation omitted)).  Further, the Appellate Division "reject[ed] [petitioner's] claim that his counsel's failure to object to the [justification] instruction constituted ineffective assistance" of counsel, reasoning that

> A timely objection to the instruction would not have
> succeeded, as our review reveals no error.  Contrary to
> [petitioner's] claim, the court did not err in instructing the jury
> to assess [petitioner's] subjective belief that deadly physical
> force was necessary to defend himself with reference to
> each individual victim, rather than with reference to all of the
> circumstances.

Id. at 1165.  The Appellate Division set forth the two-part standard imposed under N.Y. PENAL LAW § 35.15(2), pursuant to which a jury must assess the defense of justification, and concluded that the Supreme Court's "instruction mirrored these requirements and, using the language of the pattern charge, properly instructed the jury to consider the subjective element of the defense with regard to each victim and to consider the

surrounding circumstances with regard to the second, objective prong of the [section 35.15(2)] test." 134 A.D.3d at 1165.  Moreover, the Appellate Division rejected petitioner's argument that his sentence was excessive or harsh, reasoning that

> The aggregate of the two consecutive terms was shorter than the maximum that defendant could have received as a second felony offender (see Penal Law §§ 70.06 [3] [d]; 70.25).  In view of [petitioner's] lack of remorse, his criminal history, and the severity of the victims' injuries, we find no abuse of discretion or extraordinary circumstances warranting modification.

Id. (additional citations omitted).  Petitioner, represented by counsel, moved for leave to appeal from the December 3, 2015 decision and order of the Appellate Division at the New York State Court of Appeals, arguing that: (1) the Supreme Court's justification charge was incorrect; (2) defense counsel timely objected to the court's justification charge; and (3) the jury should have been polled on all counts.  See Dkt. No. 11-3 at 2-5.  By order dated June 7, 2016, the New York State Court of Appeals denied petitioner's motion for leave to appeal.  See id. at 6; People v. Harden, 27 N.Y.3d 1133 (N.Y. 2016).

## C. Petitioner's Motion to Vacate the Judgement

On April 12, 2016, petitioner filed a pro se motion to vacate the judgment of conviction pursuant to N.Y. CRIM. PROC. LAW section 440.  See Dkt. No. 11-3 at 8. Petitioner argued, as relevant here, that: (1) Supreme Court's justification instruction was erroneous; (2) trial counsel was ineffective for (a) failing to timely object to the court's justification charge; (b) acquiescing in the court's polling of only the charges upon which defendant was convicted, but not those of which he was acquitted; (c)

18

failing to preserve arguments that the justification instruction was erroneous and that the jury polling was defective, and (d) failing to object to the imposition of consecutive sentences; and (3) Supreme Court's imposition of consecutive sentences was illegal. See id. at 8-24.  The People did not file a response in opposition.  See Dkt. No. 10-1 at 9.

In a May 19, 2016 decision and order, the New York State Supreme Court, Albany County, denied petitioner's motion in its entirety.  See Dkt. No. 11-3 at 177.  The court stated that post-judgment motions are "not substitute[s] for . . . appeal[s,]" and explained that "[a] matter is not appropriately raised in a CPL 440 motion if it can be raised in the context of a defendant's direct appeal from the conviction or could have been raised, but was not, in an appeal that was filed."  Id. at 174 (citing N.Y. CRIM. PROC. LAW § 440.10(2)(b)(c)) (additional citations omitted).  The court held that all of the issues raised by petitioner in his CPL 440 motion were "or could have been, raised on the appeal which was decided and therefore this motion must be denied."  Id. at 175 (citing N.Y. CRIM. PROC. LAW 440.10(3)(a), (c)).  Of particular relevance, the court observed that petitioner's "primary complaint concerning the defense of justification was rejected on appeal and that determination supports defense counsel's position at trial which was that she explained to defendant that the defense had to be considered separately as to each count.  Defense counsel's position is indicated on the record.  It is not ineffective assistance of counsel for counsel to choose not to raise an issue that has little or no chance of success."  Id. at 175-76.

Further, with respect to petitioner's sentence, the court noted that "[t]he Appellate Division considered whether [petitioner's] sentence was harsh or excessive and

determined that it was neither." Dkt. No. 11-3 at 176. Nevertheless, the court reasoned, "[i]nasmuch as [the Appellate Division did] not specifically state[] that the sentence was lawful, to the extent that it can be said that [petitioner] is raising an issue pursuant to CPL 440.20 seeking to set aside the sentence, th[e] court [would] consider that claim." Dkt. No. 11-3 at 176. The court observed that New York

> Penal Law § 70.25(2) requires that sentences for two or more offenses committed through a single act must run concurrently. However, consecutive sentences may be imposed when, although part of a continuous course of conduct, the acts can be separated into separate and distinct acts . . . . In [petitioner's] case, there were separate stabbing or slashing actions against two different victims. Consecutive sentences were permitted and the sentences, which were within the statutorily prescribed ranges, have not been shown to be unauthorized, illegally imposed or otherwise invalid. Defendant's motion is denied.

Id. at 177 (citing CPL 440.20(1)) (additional citations omitted).

On June 16, 2016, petitioner sought leave to appeal the Supreme Court's May 19, 2016 decision and order denying his CPL 440 motion. See Dkt. No. 11-3 at 179-85. On August 9, 2016, the Appellate Division denied petitioner's application. See id. at 186.

### D. Motion for Writ of Error Coram Nobis

On May 22, 2017,[6] petitioner filed a motion for writ of error coram nobis in the Appellate Division seeking to vacate that court's December 2015 decision and order. See Dkt. No. 11-3 at 187, 189. Petitioner argued, as relevant here, that "[a]ppellate [c]ounsel was ineffective for failing to raise a winning argument of the ineffectiveness of

---

[6] May 22, 2017, is the date petitioner placed his petition for writ of error coram nobis in the depository box at Fishkill Correctional Facility for U.S. Postal Service. See Dkt. No. 11-3 at 189.

trial counsel, and instead raised issues that were unpreserved for appellate review[,]" including that appellate counsel "changed the dynamics of the argument[] by stating the jury rejected the defense of justification which[] cannot be inferred from a silent record[]." Dkt. No. 11-4 at 12. The People did not file a response to the petition. See Dkt. No. 10-1 at 9.

On August 25, 2017, the Appellate Division, Third Department, denied petitioner's motion for writ of error coram nobis. See Dkt. No. 11-4 at 83. Petitioner then sought leave to appeal the Appellate Division's denial of his motion for writ of coram nobis to the New York State Court of Appeals. See id. at 84. In an order dated November 10, 2017, the New York State Court of Appeals denied petitioner's application for leave to appeal. See id. at 88. In February 2018, petitioner filed the present petition for writ of habeas corpus. See Pet.

## II. Discussion[7]

### A. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas review only if state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). When evaluating

---

[7] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

a habeas petition,[8] "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court [of the United States] on a question of law or if the state court decides a case differently than [the Supreme] Court [of the United States] has on a set of materially indistinguishable facts.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court may not review the habeas petition if the state court's application of Supreme Court precedent was objectively reasonable. Id. at 409.

## B. Jury Charge: Defense of Justification

Plaintiff avers that the trial court's jury charge concerning the defense of justification was erroneous because it did not "instruct that if the jury found petitioner justified of the greater counts it was not to consider lesser counts." Pet. at 5. Therefore, petitioner argues that the trial court's justification charge violated his due process right to a fair trial by allowing the jury to consider the lesser-included offense of

---

[8] In the § 2254 habeas context, "[a] statute of limitations defense . . . is not 'jurisdictional,' hence courts are under no *obligation* to raise the time bar *sua sponte*." Day v. McDonough, 547 U.S. 198, 205 (2006); see also Acosta v. Artuz, 221 F.3d 117, 122 (2d Cir. 2000) ("The AEDPA statute of limitation is not jurisdictional, and nothing in AEDPA or in the 2254 Habeas Rules indicates that the burden of pleading the statute of limitation has been shifted from the respondent to the petitioner. The AEDPA statute of limitation is therefore an affirmative defense and compliance therewith need not be pleaded in the petition. Generally, courts should not raise *sua sponte* nonjurisdictional defenses not raised by the parties." (footnote and citations omitted)). Accordingly, "district courts are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition." Day, 547 U.S. at 209. Because respondent does not argue that Sanchez's habeas petition is untimely, the Court need not further consider the issue. See Day, 547 U.S. at 210.

assault in the second degree in violation of "the federal double jeopardy cause[sic]" after finding that he was justified as to the greater offense of assault in the first degree.  Id.; see Dkt. No. 20 at 7.  Moreover, petitioner contends that the trial court's justification charge was erroneous because it "failed to instruct that the jury could consider third party aggressor's acting in concert with the victims . . ., effectively removing an issue of fact from the jury's consideration all together [sic]."  Dkt. No. 20 at 7-8.  Respondent argues that petitioner's claims that the trial court's jury charge regarding justification are procedurally barred on an adequate and independent state law ground.  See Dkt. No. 10-1 at 10, 13-15.

**1. Procedural Bar**

Petitioner's trial counsel did not object to the trial court's justification defense until after the jury had submitted a note to the court that it had reached a verdict —and did so explicitly only at petitioner's request, despite stating on the record that she had discussed petitioner's concern with the justification charge, but that he was "insisting that [counsel was] wrong . . . ."  Dkt. No. 11-2 at 424-425.  On appeal, the Appellate Division explicitly ruled that "this objection came too late" and was "unpreserved." Harden, 134 A.D.3d at 1164.  The Appellate Division reviewed petitioner's claim only insofar as its "weight of the evidence analysis necessarily involve[d] an evaluation of whether all elements of the charged crimes were proven beyond a reasonable doubt at trial."  Id. (internal quotation marks and citation omitted).  Accordingly, as petitioner's claim is procedurally defaulted, this Court must determine whether that ruling constitutes an adequate and independent state ground for the Appellate Division's

decision that bars federal habeas review of this claim.  See Coleman v. Thompson, 501 U.S. 722, 729 (1991) (Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." (citation omitted), holding modified on other grounds by Martinez v. Ryan, 566 U.S. 1 (2012).

"The Appellate Division's statement that the claim was 'unpreserved' is sufficient to establish that it was relying on the procedural bar as an independent ground in disposing of this issue[, and t]he procedural bar applies even where, as here, the court makes an alternative ruling on the merits."  Rolling v. Fischer, 433 F. Supp. 2d 336, 345 (S.D.N.Y. 2006) (citations omitted).  Further, although the New York Court of Appeals issued a summary order denying leave to appeal on petitioner's direct appeal, "where 'the last reasoned opinion on the claim explicitly imposes a procedural default," as the Appellate Division's holding did here—"a federal habeas court will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." Id. (quoting Ylist v. Nunnemaker, 501 U.S. 797, 803 (1991) (additional citation omitted)). Consequently, "the procedural default relied upon by the Appellate Division constituted an 'independent' state law ground for the decision."  Id.

"Where a state law procedural bar thus forms an independent basis for the state courts' judgment," a federal court will only review the merits of the "petitioner's claim if the state law bar was not 'adequate to support the judgment,' meaning that it was not 'firmly established and regularly followed,' or that, despite being firmly established, it was an "exorbitant application of a generally sound rule[.]"  Wright v. Duncan, 500 F. App'x 36, 37 (2d Cir. 2012) (summary order) (quoting Walker v. Martin, 526 U.S. 307,

315 (2011); <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002) (additional citation omitted)).

Here, petitioner does not dispute that New York's contemporaneous objection rule is

firmly established and regularly followed. <u>See</u> Pet. at 5; Dkt. No. 20 at 9-11. Rather,

petitioner contends that his jury charge claim should not be procedurally barred

because the trial court's "jury instructions prejudiced . . . petitioner, where it had a

substantial and injurious effect and influence in determining the jury's verdict." <u>Id.</u> at 10.

To the extent petitioner's <u>pro se</u> petition may be read as contending that the trial court

misapplied New York's contemporaneous objection rule, "federal habeas court[s]

generally do[] not review purported errors of state law." <u>Wright</u>, 500 F. App'x at 38; <u>see</u>

<u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions.").

Moreover, petitioner cannot establish that the trial court's application of the

contemporaneous objection rule was an "exorbitant application" of that rule. <u>Lee</u>, 534

U.S. at 376. The Second Circuit has articulated the following "guideposts" that federal

habeas courts may consider in determining whether claims fall "within th[e] limited

category" of an exorbitant application of a generally sound rule":

> (1) whether the alleged procedural violation was actually
> relied on in the trial court, and whether perfect compliance
> with the state rule would have changed the trial court's
> decision; (2) whether state caselaw indicated that
> compliance with the rule was demanded in the specific
> circumstances presented; and (3) whether petitioner had
> "substantially complied" with the rule given "the realities of
> trial," and, therefore, whether demanding perfect compliance
> with the rule would serve a legitimate governmental interest.

<u>Cotto v. Herbert</u>, 331 F.3d 217, 240 (2d Cir. 2003). New York's contemporaneous-

objection rule requires that a criminal defendant object to that ruling or instruction at a

time when the trial court "had an opportunity of effectively changing" it.  N.Y. CRIM. PROC. LAW 470.05(2).[9]

As to the first factor, in denying counsel's objection, the trial court explicitly stated, "that the objection [to the justification charge] was not made timely."  Dkt. No. 11-2 at 425.  Thus, not only did the trial court "actually rel[y] on" the contemporaneous objection rule, it properly applied it.  Cotto, 331 F.3d at 240.  Next, New York caselaw clearly demanded compliance with the contemporaneous objection rule in the specific circumstances presented.  See id.  Indeed, it is well settled under New York case law that that objections to a jury charge must be made when the charge is given, and that objections to a jury charge made after the jury has informed the court that it has reached its verdict are untimely and procedurally barred by the contemporaneous objection rule.  See People v. Houck, 101 A.D.3d 1239, 1240, 955 N.Y.S.2d 682 (N.Y. App. Div. 3d Dept. 2012) ("[The d]efendant did not object to . . . the  . . . jury instructions at the time that they were given.  Because he did not protest these issues at a time when the court had an opportunity to correct the alleged errors, they are not preserved for our review." (citing N.Y. CRIM. PROC. LAW 470.05(2) (additional citations omitted)).  Moreover, petitioner does not, and cannot, contend that he substantially complied with the contemporaneous objection rule, as the record makes clear that no objection was

---

[9]  The rule provides, in full:

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal.  In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

timely lodged at the time the jury charge was given, see Cotto, 331 F.3d at 240; Dkt. No. 11-2 at 424-25, and "the state has a strong interest in requiring parties to bring 'any matter which a party wishes the appellate court to decide . . . to the attention of the trial court at a time and in a way that [gives] the latter the opportunity to remedy the problem and thereby avert reversible error.'" Rolling, 433 F. Supp. 2d at 346 (quoting People v. Luperon, 85 N.Y.2d 71, 78, 623 N.Y.S.2d 735, 739, 647 N.E.2d 1243, 1247 (N.Y. 1995)).  In addition, petitioner cannot contend that the he explicitly raised a due process objection to the challenged jury instruction before the trial court, and the "New York Court of Appeals has long rejected invitations to review constitutional arguments purportedly raised implicitly in the trial court." Wright, 500 F. App'x at 38 (citing People v. Angelo, 88 N.Y.2d 217, 222, 644 N.Y.S.2d 460, 461, 666 N.E.2d 1333, 1334 (N.Y. 1996) (holding due process claims unpreserved for appellate review where they were not presented to trial court along with evidentiary objections)).  Thus, the Appellate Division's reliance on New York's preservation rule constitutes an adequate and independent ground for the state court decision in this case.  See Rolling, 433 F. Supp. 2d at 346; Velasquez v. Lempke, No. 11-CV-7878 (LGS), 2014 WL 626874, at *16 (S.D.N.Y. Feb. 18, 2014) ("A state procedural rule, such as a contemporaneous-objection rule . . . can qualify as an adequate and independent state-law ground.").

"[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262 (1989) (internal quotation marks and citations omitted).  To establish a

"'fundamental miscarriage of justice,' a petitioner must demonstrate 'actual innocence.'" Rolling, 433 F. Supp. 2d at 347 (quoting Harris, 489 U.S. at 262; Calderon v. Thompson, 523 U.S. 538, 559 (1998) (additional citations omitted)).  Here, petitioner has made no showing of "actual innocence."  Calderon, 523 U.S. at 559.  Moreover, petitioner has not shown "cause" for the default, aside from his claim of ineffective assistance of trial counsel, which the Court rejects in subsection II.C.2., supra.  Thus, "[b]ecause the defense failed to object to the charge as given and because petitioner has not established any basis for an exception to the procedural bar, this court may not review his jury-charge claim on the merits."  Velasquez, 2014 WL 626874, at *24.  Accordingly, it is recommended that petitioner's due process challenge to the trial court's jury charge on justification be dismissed.

### C. Ineffective Assistance of Counsel

#### 1. Legal Standard

The standard applicable to ineffective assistance of counsel ("IAC") claims is "highly demanding," Kimmelman v. Morrison, 477 U.S. 365, 382 (1986), and "rigorous," Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).  To prevail on an IAC claim, a defendant must meet a two-pronged test: (1) he "must show that counsel's performance was deficient," Strickland v. Washington, 466 U.S. 668, 687 (1984), such that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," id. at 690; and (2) he must show "that the deficient performance prejudiced the defense," id. at 687, in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different," id. at 694.  "[An] IAC claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." Bennett v. United States, 663 F.3d 71, 85 (2d Cir. 2011).

Strickland instructs a court to "indulge a strong presumption that counsels' conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Strickland, 466 U.S. at 689 (quoting Michael v. State of Louisiana, 350 U.S. 91, 101 (1955)).  The Supreme Court recognized in Strickland that "there are countless ways to provide effective assistance in any given case," and that even the "best criminal defense attorneys would not defend a particular client the same way."  Id.  Thus, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"  Id. at 690.

Further, the AEDPA requires a federal habeas court to give deference to a state court's ruling on claims of ineffective assistance of counsel.  See Harrington v. Richter, 562 U.S. 86, 101 (2011) ("A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.").  Thus, when ineffective assistance claims are considered under the AEDPA, the reviewing court affords a "doubly" deferential standard regarding the state court opinion. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).  In other words, when § 2254(d) applies, "[t]he pivotal question" for the federal habeas court "is whether the state court's application of the *Strickland* standard was unreasonable."  Richter, 562 U.S. at 101.

**2. Ineffectiveness of Trial Counsel**

Petitioner contends that trial counsel was ineffective for failing to timely object to the trial court's jury charge regarding the defense of justification. <u>See</u> Pet. at 7; Dkt. No. 20 at 12.  Respondent counters that petitioner's ineffective trial counsel claim is meritless. <u>See</u> Dkt. No. 10-1 at 15-20.  Here, as discussed above, the Appellate Division explicitly rejected petitioner's claim that trial counsel was ineffective for failing to timely object to the trial court's justification charge. <u>See</u> <u>Harden</u>, 134 A.D.3d at 1164-65.  Therefore, the relevant inquiry for the Court "is whether the [Appellate Division's] application of the <u>Strickland</u> standard was unreasonable." <u>Richter</u>, 562 U.S. at 101.  The Court concludes that it was not.

The Appellate Division rejected petitioner's ineffective assistance claim against trial counsel based on her failure to timely object to the trial court's jury charge concerning the justification defense on the basis that "[a] timely objection to the instruction would not have succeeded, as [the Appellate Division's] review reveal[ed] no error." <u>Harden</u>, 135 A.D.3d at 1164.  With respect to petitioner's argument that the trial court "effectively remov[ed] an issue of fact from the jury's consideration" by improperly "limit[ing] the factors the jury could consider in deciding whether the petitioner acted in self[-]defense, when the court failed to instruct that the jury could consider third party aggressor's acting in concert with the victims" and "by referring exclusively to the imminent danger posed to the petitioner by Jonathan Puerta, Christopher Puerta, and Richard Thomas, 'considered individually[,]'" his argument is belied by relevant New York case law, and any objection made by trial counsel would have failed.  Dkt. No. 20 at 7-8 (citing Dkt. No. 11-2 at 380); <u>see</u> <u>People v. Young</u>, 33 A.D.3d 1120, 1123, 825 N.Y.S.2d 147 (N.Y. App. Div. 3d Dept. 2006) ("[T]he fact that a defendant's conduct was

30

directed at a particular attacker does not preclude the jury from considering the conduct

of third-party aggressors involved in the altercation in determining whether a defendant

reasonably believed that he or she was being subjected to deadly physical force."

(citation omitted)), lv denied 8 N.Y.3d 929 (N.Y. 2007).   Indeed, trial counsel noted on

the record that she had tried to explain the futility of petitioner's position to him—which

explains why she had not objected to the trial court's jury charge at an earlier time—but

that petitioner "insist[ed]" that she raise his objection to the justification charge in this

regard.  Dkt. No. 11-2 at 425.  Thus, because trial counsel had no basis to object to the

trial court's jury charge, her conduct cannot be said to be so deficient that, "in light of all

the circumstances, the identified acts or omissions were outside the wide range of

professionally competent assistance."  Strickland, 466 U.S. at 690.  Accordingly, it is

recommended that petitioner's claim in this regard be dismissed.

Further, petitioner argues that trial counsel was ineffective for failing to object to

the trial court's justification charge on the basis that the trial court's justification charge

"failed to convey that a finding of justification on the top counts [of first degree assault]

precluded further deliberation."  Pet. at 12; Dkt. No. 20 at 11.  Citing People v. Velez

(131 A.D.3d 129, 13 N.Y.S.3d 354 (N.Y. App. Div. 2d Dept. 2015)) and People v. Feuer

(11 A.D.3d 633, 782 N.Y.S.2d 858 (2004)), petitioner avers that "[t]rial counsel

deliberately violated [his] right to equal protection of the law [by] fail[ing] to object and

argue for stare decisis, since there existed at the time of said jury instruction, binding

case law authorities from the 1st and 2nd Departments of the Appellate Division

regarding the defectiveness of trial jury instruction [sic] on justification which resulted in

prejudice to the petitioner by being unlawfully imprisoned."  Id. at 16.  As respondent

avers, this contention lacks merit and fails to establish that trial counsel was ineffective.
<u>See</u> Dkt. No. 10-1 at 18.

First, "whether [a particular jury] instruction was required is purely a question state law beyond the purview of this Court in a federal habeas proceeding" <u>Rollins v. Lavalley</u>, No. 9:10-CV-01164 (JKS), 2012 WL 5996011, at *4-5 (N.D.N.Y. Nov. 30, 2012), and petitioner may not convert this state law issue into a federal one by merely asserting a violation of a federal constitutional right. <u>See</u> <u>Battease v. Chappis</u>, No. 9:11-CV-01072 (JKS), 2013 WL 6589566, at *8 (N.D.N.Y. Dec. 16, 2013) (A habeas corpus petitioner "can not transform [a] state-law issue into a federal one by simply asserting a violation of . . . equal protection."); <u>see also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.") (internal quotation marks and citations omitted). Further, whether the type of charge petitioner references, known as a "stop-consideration" charge, is required is an open question under New York law. <u>See</u> <u>Ramos v. Comm'r of Soc. Sec.</u>, No. 09-CV-2531 (AJN), 2015 WL 1134212, at *25 (S.D.N.Y. Mar. 12, 2015) ("[I]t is not clear that New York law unequivocally requires such a 'stop-consideration' charge."); <u>Holmes v. Brown</u>, No. 10-CV-03592 (CBA), 2013 WL 6408496, *8 (E.D.N.Y. Dec. 6, 2013) ("The New York Court of Appeals, however, has not yet ruled on whether such an instruction is required."), <u>motion for relief from judgment denied</u>, 2014 WL 1653265 (E.D.N.Y. Apr. 24, 2014); <u>Chambers v. Conway</u>, No. 9-CV-2175 (JGK), 2010 WL 1257305, *2 (S.D.N.Y. Mar. 29, 2010) ("Other courts in this Circuit have found that New York case law does not require that a trial court specifically instruct a jury that it must stop consideration of lesser counts if it finds a defendant not guilty of a greater count based on the defense of

justification, as long as the trial court otherwise instructs the jury that it must acquit the defendant if the prosecution fails to disprove the justification defense.") (citing Duncan v. Fischer, 410 F.Supp.2d 101, 113-14 (E.D.N.Y.2006)).  Indeed, in considering a nearly identical argument concerning the question of whether trial counsel's decision not to object to the trial court's jury charge on justification that did not include the stop-consideration language constituted ineffective assistance of counsel, one court in this Circuit answered the question in the negative, explaining

> Because there is no clear state rule on whether the stop-consideration language must be included, counsel's decision not to object to the justification charge did not constitute ineffective assistance, and this [c]ourt therefore cannot hold that the [Appellate Division's] ineffective assistance determination was either contrary to, or an unreasonable application of, the *Strickland* standard.

Love v. Smith, No. CV-08-3746 (BMC), 2009 WL 2422384, at *7 (E.D.N.Y. Aug. 6, 2009).

In any event, even assuming arguendo that New York law requires a stop-consideration charge and, therefore, that the charge given by the trial court was technically erroneous for omitting a stop-consideration provision, the charge adequately conveyed that "[i]t [wa]s . . . an element of each count of the indictment that the defendant was not justified," and that "if you find the People have failed to prove beyond a reasonable doubt that [petitioner] was not justified, then you must find the defendant not guilty on all counts."  Dkt. No. 11-2 at 382-83.  Therefore, the jury necessarily found that the People proved beyond a reasonable doubt that petitioner was not justified as to any count when it found petitioner guilty of the lesser-included crime of assault in the second degree.  See id.  Thus, there is no reason to believe that the jury verdict would

have come out differently had the trial court's charge contained a stop-consideration

provision, as petitioner suggests.  Indeed, as the Supreme Court has observed, courts

"generally presume that jurors follow their instructions."  Penry v. Johnson, 532 U.S.

782, 799 (2001) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)); United States

v. Stewart, 590 F.3d 93, 124 (2d Cir. 2009).  If the jurors followed the detailed charge

provided by the trial court here, as set forth in detail above, it is not possible that they

found that the People failed to prove beyond a reasonable doubt that petitioner was not

justified of assault in the first degree, because the trial court adequately instructed the

jurors that was an element of the crime.  See Dkt. No. 11-2 at 382.  Said another way,

the trial court's justification charge "otherwise instruct[ed] the jury that it must acquit the

defendant if the prosecution fail[ed] to disprove the justification defense."  Chambers,

2010 WL 1257305, *2.  Accordingly, the Appellate Division's rejection of petitioner's

argument that the justification charge was erroneous and that trial counsel was

ineffective for failing to object in this regard was neither contrary to nor an unreasonable

application of, Supreme Court precedent, and petitioner is not entitled to habeas relief

on this ground.

Based on the foregoing, petitioner's claims alleging ineffective assistance of trial

counsel fail to establish "cause" for the procedural default and petitioner has failed to

make any showing of actual innocence.  Accordingly, it is recommended that petitioner's

claims on the issue of ineffective assistance of trial counsel be dismissed as

procedurally barred.

### 3. Ineffectiveness of Appellate Counsel

Petitioner contends that appellate counsel was ineffective because counsel: (1) "misapprehended the trial record by stating thing [sic] that the jury rejected the justification defense which could not be inferred from silent record"; (2) raised issues which were knowingly unpreserved in the record of the trial transcript; and (3) failed to argue that the imposition of consecutive sentences was illegal.  Pet. at 8.  In opposition, respondent contends that petitioner's third claim "was not asserted in the state courts" and is, therefore, is unexhausted.  Dkt. No. 10-1 at 20.  In any event, respondent contends, all of plaintiff's IAC claims concerning appellate counsel lack merit.  See id.

### a. Exhaustion

Before a federal court may determine the merits of a habeas corpus claim, petitioners are required first to exhaust their available state court remedies.  See 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . .").  This exhaustion requirement is satisfied if the federal claim has been "fairly presented" to the state courts.  Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court."  Daye v. Attorney General of State of New York, 696 F.2d 186, 191 (2d Cir. 1982).  "Although the petitioner need not have cited 'book and verse on the [F]ederal [C]onstitution,' he must have articulated 'the substantial equivalent' of the federal habeas claim."  Colon v. Artuz, 174 F. Supp. 2d

108, 114 (S.D.N.Y. 2001) (quoting Picard, 404 U.S. at 278).  Moreover, in order for a petitioner to properly exhaust his claim, he "must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"; this includes presenting "both the factual and legal premise of the federal claims ultimately asserted in the [federal] habeas petition" to the New York Court of Appeals.  Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation and quotation marks omitted).

The Second Circuit has observed that "the proper vehicle for bringing a claim of ineffectiveness of appellate counsel [i]s a writ of error coram nobis addressed to the appellate division which affirmed the original conviction."  Mathis v. Hood, 851 F.2d 612, 615 (2d Cir. 1988) (italics and citation omitted); see also Ehinger v. Miller, 928 F. Supp. 291, 294 (S.D.N.Y. 1996) ("[A] coram nobis motion to the Appellate Division addresses errors at the appellate level, including ineffectiveness of appellate counsel . . . .").  Here, as respondent correctly points out, petitioner did not argue in his coram nobis motion that appellate counsel was ineffective for failing to argue that the trial court's imposition of consecutive sentences was illegal.  See Dkt. Nos. 11-3 at 187-198, 11-4 at 1-20.[10] Thus, as petitioner raises this contention for the first time in his habeas corpus petition, his claim is not exhausted.  See Dorsey, 112 F.3d at 52; see also Vasquez v. New York, No. 17-CV-697 (VEC/OTW), 2020 WL 2859007, at *9 (S.D.N.Y. Feb. 27, 2020) ("Each factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it."

---

[10]  The undersigned notes that petitioner also did not raise this issue in his motion for leave to appeal the Appellate Division order denying his coram nobis motion.  See Dkt. No. 4 at 85-86.

(italics omitted)), report and recommendation adopted, No. 17-CV-697 (VEC/OTW), 2020 WL 1271363 (S.D.N.Y. Mar. 16, 2020).

A habeas petition containing both exhausted and unexhausted claims is considered a "mixed" petition. Rhines v. Weber, 544 U.S. 269, 271 (2005). "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). A district court confronted with a mixed petition has discretionary power to dismiss it in its entirety, or "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." Rhines, 544 U.S. at 275. The stay-and-abeyance procedure is "available only in limited circumstances" when "there [is]s good cause for the petitioner's failure to exhaust his claims first in state court." Id. at 277. However, even if good cause exists, granting a stay would be an abuse of discretion if the "unexhausted claims are plainly meritless." Id. (citation omitted).

In the present case, respondent has aptly pointed out that it is uncertain that petitioner could exhaust his claim that appellate counsel was ineffective for failing to argue that the trial court's imposition of consecutive sentences was illegal if afforded a stay-and-abeyance, as the case law in this Circuit is unclear as to whether petitioner would be entitled to file a second coram nobis motion. See Dkt. No. 10-1 at 21 (citing Hayes v. Lee, No. 11-CV-1365 (KMK/PED), 2015 WL 5943677, at *9 (S.D.N.Y. Oct. 13, 2015) (collecting cases)). However, the Court need not reach a determination on this issue because petitioner has not shown cause as to why he failed to raise his argument in his coram nobis motion. See Pet. at 8; Dkt. No. 20 at 15-21; see Miller v. Chapplus,

No. 9:16-CV-512 (TJM/CFH), 2018 WL 2709228, at *7 (N.D.N.Y. Apr. 2, 2018) ("As [the] petitioner has not established cause for his procedural default of these claims, the Court need not address prejudice." (citation omitted)), <u>report and recommendation adopted</u>, No. 9:16-CV-512 (TJM/CFH), 2018 WL 2694425 (N.D.N.Y. June 5, 2018); <u>Stepney v. Lopes</u>, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, [the court] need not, in light of [its] conclusion that there was no showing of cause, reach the question of whether or not [the petitioner] showed prejudice."). Moreover, for the reasons explained below, because petitioner's unexhausted ineffective assistance of appellate counsel claim is "plainly meritless," as are his remaining arguments, it is recommended that the Court dismiss all of petitioner's claims alleging ineffective assistance of appellate counsel. <u>Rhines</u>, 544 U.S. at 277; <u>see</u> <u>Rolling</u>, 433 F. Supp. 2d at 349 ("[The court] may deny [the petitioner's claims] without regard to the lack of exhaustion because they fail on the merits.").

### b. Merits

As an initial matter, petitioner's contention that appellate counsel was ineffective for failing to argue that the imposition of consecutive sentences was illegal lacks merit. <u>See</u> Pet. at 8. In denying petitioner's CPL 440 motion, the trial court recognize that the Appellate Division rejected petitioner's argument that his sentence was harsh and excessive. <u>See</u> Dkt. No. 11-3 at 176; <u>Harden</u>, 134 A.D.3d at 1165. As the trial court explained, N.Y. PENAL LAW § 70.25(2) provides that, "[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a

single act . . . the sentences . . . must run concurrently."  Id. at 177.  "However, . . . sentences may be imposed to run consecutively when multiple offenses are committed through separate and distinct acts, though they are part of a single transaction."  People v. Ramirez, 89 N.Y.2d 444, 451, 677 N.E.2d 722, 725 (1996); People v. Moon, 119 A.D.3d 1293, 1294-95, 990 N.Y.S.2d 98 (2014) ("[C]onsecutive sentences may be imposed when the acts involved, though part of a continuous course of conduct, can be separated into separate and distinct events." (internal quotation marks and citations omitted)).   As the state trial court concluded, in the present case, consecutive sentences were permissible under New York law, because "there were separate stabbing or slashing actions against two different victims."  Dkt. No. 11-3 at 177.  As petitioner's claim in this regard is wholly meritless, appellate counsel's decision not to pursue the claim was reasonable and does not establish ineffective assistance of counsel.  See Kalyon v. Hood, No. 91-CV-107 (EHN), 1991 WL 159079, at *1 (E.D.N.Y. June 30, 1991) ("Failure to raise a meritless issue on direct appeal does not constitute ineffective assistance of appellate counsel.").

Petitioner's remaining claims are likewise plainly meritless.  Insofar as petitioner argues that appellate counsel was ineffective because he advanced arguments that "misapprehended the trial record by stating thing [sic] that the jury rejected the justification defense which could not be inferred from silent [sic] record," Pet. at 8, his claim is meritless for the reasons set forth in detail in subsection II.C.2., supra.  In particular, as respondent contends, the jury necessarily rejected the defense of justification, as it could not have found petitioner guilty of assault in the second

degree—as lack of justification was an element of both crimes.  See Dkt. No. 11-2 at 382-83, 385-86.

Moreover, petitioner's claim that appellate counsel was ineffective for "rais[ing] issues which were knowingly unpreserved in the record of the trial transcript," Pet. at 8, is also plainly meritless.  In this respect, petitioner points to appellate counsel's argument that petitioner's challenge to the trial court's justification charge had been preserved for appellate review.  See id.; Dkt. No. 11-1 at 160 (petitioner's counsel's appellate division brief, arguing that petitioner preserved his challenge to the trial court's justification charge by objecting to the charge before the verdict was announced and in his CPL 440 motion).  As respondent contends, the Appellate Division has discretionary power to review unpreserved claims pursuant to N.Y. C.P.L.R. § 470.15(6)(a).  Further, "[a]ppellate counsel's decision to raise unpreserved claims does not, by itself, lead to a finding of ineffective assistance of counsel."  Moore v. Conway, No. 08-CV-639 (OT), 2010 WL 4117411, at *10 (W.D.N.Y. Oct. 20, 2010), aff'd, 476 F. App'x 928 (2d Cir. 2012) (summary order).  Indeed, as petitioner asserts the same claim in his present habeas corpus petition, petitioner's basis for asserting that appellate counsel was ineffective for also raising that claim is unclear.  See Pet. at 5.

In addition, to the extent that petitioner avers that "[a]ppellate counsel should have raised ineffective assistance of trial counsel, because trial counsel failed to register a timely objection to the court's defective jury instruction on justification, which appeared on the face of the record[,]" Dkt. No. 20 at 16, his claim is meritless.  As discussed above, because petitioner's claim that trial counsel was ineffective for failing to timely object to the trial court's justification charge lacks merit, it was reasonable for appellate

40

counsel not to raise an ineffective assistance of counsel claim as to trial counsel on that basis.  See Brown v. Martuscello, No. 12-CV-0054 (PKC), 2014 WL 415950, at *13 (E.D.N.Y. Feb. 4, 2014) ("Because [the p]etitioner's ineffective assistance of trial counsel claim is entirely meritless, appellate counsel's decision not to argue this claim on appeal was reasonable and tactical, as it had little to no chance of success. Appellate counsel cannot be found ineffective on this ground.").  Thus, it is recommended that petitioner's claims of ineffective assistance of appellate counsel be dismissed as without merit.

### III. Conclusion

For the reasons stated above, it is hereby:

1) **RECOMMENDED** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED IN ITS ENTIRETY**; and it is further

2) **RECOMMENDED** that no certificate of appealability be issued with respect to any of petitioner's claims as petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).  See 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); see also Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v.

Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: April 16, 2021
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge